IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:12-CR-031 |
| ) | |
| PATRICK SHANE O'FERRALL ) | |

## MEMORANDUM AND ORDER

The defendant pled guilty to possession of child pornography and will be sentenced on July 11, 2013. Some of the images he possessed were from the "jan_feb" child pornography series. "L.S.," a minor female, is the subject of "jan_feb" and has filed a request for victim restitution, seeking at least $150,000.00 from the defendant.[1]

The court ordered the attorneys for the prosecution, the defendant, and L.S. to each file supplemental briefing in light of a recent ruling of the Sixth Circuit Court of Appeals, *United States v. Gamble*, 709 F.3d 541 (6th Cir. 2013). The prosecution and the defense complied with that order. L.S. did not.

I.

*Pertinent Authority*

The governing restitution statute in this case is 18 U.S.C. § 2259. *See, e.g., Gamble*, 709 F.3d at 543. In material part, § 2259 provides:

---

[1] The defendant possessed "jan_feb" images but had no involvement in their production, nor did he directly abuse L.S.

(b) Scope and nature of order.--

(1) Directions. – The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court . . . .

. . .

(3) Definition. – For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for--

> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) attorneys' fees, as well as other costs incurred; and
>
> (F) any other losses suffered by the victim as a proximate result of the offense.

(4) Order mandatory. –

> (A) The issuance of a restitution order under this section is mandatory.
>
> . . .

(c) Definition.--For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim . . . .

18 U.S.C. § 2259.

2

It is undisputed in this case that L.S. is a "victim" under § 2259(c). For all categories of restitution under § 2259(b)(3), the government must show that the victim's losses "were proximately caused by the defendant's offense." *Gamble*, 709 F.3d at 546 (quoting *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012)).

II.

*Causation*

Attached to L.S.'s restitution request is a July 1, 2010 victim impact report prepared by forensic pediatrician Sharon W. Cooper. Dr. Cooper has evaluated L.S. during multiple interviews. Dr. Cooper describes various forms of physical and psychological harm that L.S. has suffered, and continues to suffer, as a result of the "jan_feb" pornography. Dr. Cooper opines that approximately one half of that harm was caused by the persons who directly abused L.S., and that the other half is caused by persons unknown to L.S. who "continue to download, trade and possess images of her abuse." According to Dr. Cooper, L.S. is

> adamant that the downloading, trading and possession of images of her victimization that continues to the present [] is in fact causing her to experience further injury and ongoing extreme angst. She expresses disgust in knowing that people are looking at her images with enjoyment and she states that this knowledge continues to prevent her from healing because her privacy is being repeatedly invaded.

With one exception to be discussed below, the court finds Dr. Cooper's report credible and persuasive. The court further finds that the defendant has proximately caused harm to L.S. "[T]he materials produced are a permanent record of the children's participa-

3

tion and the harm to the child is exacerbated by their circulation." *Gamble*, 709 F.3d at 549 (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)).

> The harm endured by the subject of child pornography upon realizing that others are viewing her image is part of what the child pornography prohibitions are designed to deter. . . . Because injury in the form of mental distress is included in the statute, attendant costs, to the extent factually caused by the viewing, are proximately caused. Similarly, attorneys' fees incurred in the reasonable effort to obtain restitution for such harm are proximately caused.

*Gamble*, 709 F.3d at 550.

The defendant argues that he owes no restitution to L.S. because there is no proof that he actually *viewed* any of the "jan_feb" images. To the extent that this argument merits any comment at all, the court simply notes that *possession* is enough. L.S.'s "losses result from the knowledge that her image is being generally circulated, and a district court could find that [the defendant] contributed to that knowledge." *Gamble*, 709 F.3d at 549 n.1. In light of the present defendant's *possession* of "jan_feb" images, restitution is appropriate.

III.

*Restitution*

The court must next determine the amount of restitution to be awarded. The Sixth Circuit in *Gamble* recognized that there may be more than one valid manner of calculating restitution under § 2259. *See id.* at 554. Specifically, however, the *Gamble* panel approved of the formula offered by the prosecution in that case. *See id.* at 553 ("One fair reconciliation of these issues is to apportion restitution awards using the formula advocated by the Government."). This court will employ that method herein.

4

Under *Gamble*, the court must first determine the amount of L.S.'s "provable losses that are not traceable to a single defendant." *See id.* at 554. Dr. Cooper opines that one half of L.S.'s "physical, emotional and psychological damages . . . are directly due to the fact that others continue to download, trade and possess images of her abuse." The court credits Dr. Cooper's opinion as to emotional and psychological damages but rejects her opinion regarding physical harm.

Dr. Cooper estimates $305,300.00 in lifetime medical costs (physical) for testing and treatment of juvenile onset arthritis, uterine cancer, autoimmune disorders, and cardiac dysfunction. Despite her ultimate conclusion that possessors such as the present defendant are partially responsible for these problems, Dr. Cooper's report as a whole makes clear that these issues are in fact "a direct result of the abuse that [L.S.] frequently experienced as part of the sexual sadism that she endured . . . [and] would obviously not be attributable to the harm caused by those individuals possessing her pornographic images." Further, the government concedes this point in its brief on the issue of restitution:

> Dr. Cooper also estimates the cost of medical health care costs for L.S. However, since those costs appear to be causally linked to her prior abuse, not ongoing expenses resulting from the continued possession of her images, the United States is not arguing for restitution from this defendant for that portion of damages.

[Doc. 34, p.5, n.2].

The court will therefore only consider the _mental_ health care cost estimate prepared by Dr. Cooper. Unfortunately, that document is not a model of clarity. Dr.

5

Cooper's *medical* estimate sets forth itemized projections which cleanly add up to her stated total of expected lifetime physical health care costs. By contrast, however, the *mental* health care estimate sets forth itemizations which the court is unable to reconcile (under any conceivable mathematical approach) with the $840,000.00 total lifetime cost projection set forth at the bottom of that document. The itemizations appear to far exceed $840,000.00, leading L.S. to argue in her restitution request that Dr. Cooper predicts lifetime mental health care expenses approaching $3,400,000.00.

The government, however, adopts the court's reading of Dr. Cooper's cost estimate. [Doc. 34, p.5]. It is the government which bears the burden of proof, *see Gamble*, 709 F.3d at 546, and nothing in L.S.'s restitution request convinces the court that Dr. Cooper (whatever her mathematical approach may have been) intended for the sum total of her lifetime mental health care projection to exceed $840,000.00. The court therefore adopts that number.

Next, as noted, Dr. Cooper opined that one half of the $840,000.00 is attributable to those persons who possessed the "jan_feb" images. The court credits that opinion and concludes that $420,000.00 (one half of $840,000.00) is L.S.'s "provable losses that are not traceable to a single defendant . . . ." *Gamble*, 709 F.3d at 554. The court will add to that amount Dr. Cooper's $7,500.00 expert fee, for a total loss amount of $427,500.00. *See id.* at 550 (fees reasonably incurred in pursuit of restitution are proximately caused).[2]

---

[2] It appears that L.S. is using the same victim impact report, prepared by Dr. Cooper, in each
(continued...)

The court next notes that restitution should not be imposed for harm caused prior to the date of the defendant's offense. *See id.* at 554; *accord United States v. Hargrove*, No. 11-6131, 2013 WL 1694422, at *4 (6th Cir. Apr. 19, 2013) ("If the government carries its burden to prove that a restitution award for . . . 'L.S.' is appropriate, the court must consider that the defendant is not responsible for harm that occurred before the date of his offense"). Dr. Cooper prepared her report in July 2010. L.S. was 14 years old at the time, and Dr. Cooper estimated mental healthcare costs "across a lifespan of 70 years." Dr. Cooper's projections therefore covered a period of 56 years (70 minus 14).

The date of the instant offense is July 24, 2011, one year after Dr. Cooper's report. The defendant is therefore not responsible for harm suffered by L.S. in the first year of the 56-year period. The total relevant loss amount in this case is therefore $419,866.07 ($427,500.00 multiplied by 55 then divided by 56).

Next, the court must decide how much of the $419,866.07 is attributable to the present defendant. In *Gamble*, the Sixth Circuit found that "the number of convicted possessors is a reasonable divisor." *Gamble*, 709 F.3d at 554. The government in the present case has submitted a chart compiled by the Child Exploitation and Obscenity Section of the Department of Justice. That chart shows, to date, 80 other federally-convicted possessors of "jan_feb" images, resulting in a current divisor of 81 (the instant defendant plus 80 others).

---

[2](...continued)
of the cases in which she pursues restitution.

The defendant argues that using a divisor of 81 is "unreasonable" because it does not take into account "possessors convicted in state court or the possessors yet to be convicted in state and federal courts." The court appreciates the defendant's objection but takes judicial notice that the divisor approved in *Gamble* was the then-current pool of *federally*-convicted defendants, as documented by a chart from the same Department of Justice database used in this case. *See Gamble*, 709 F.3d at 553 (citing the Response of the United States to Amicus Brief in *Gamble*); *see also* Response of the United States to Amicus Brief in *Gamble*, Addendum II, Chronological Chart of Restitution Awards). The court therefore concludes that the number of federally-convicted "jan_feb" possessors is a reasonable and appropriate divisor in this case. *See United States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012) ("In calculating the dollar figure owed in restitution, the court need only make a reasonable determination of appropriate restitution. . . . Absolute precision is not required. . . . Moreover, the district court has leeway to resolve uncertainties with a view towards achieving fairness to the victim.") (citations and quotations omitted).

IV.

*Conclusion*

For the reasons provided herein, the defendant will be ordered to pay restitution to L.S. Restitution will be calculated by dividing $419,866.07 by the total number of federally-convicted "jan_feb" possessors. To that amount will be added L.S.'s estimated attorney fees ($5,000.00) incurred in the pursuit of restitution from the present defendant, an

8

amount that the defendant does not challenge. *See Gamble*, 709 F.3d at 550 ("attorneys' fees incurred in the reasonable effort to obtain restitution . . . are proximately caused.").

If awarded today, restitution would be directed in the amount of $10,183.53 ($419,866.07 divided by 81, plus $5,000.00). However, to insure the most accurate possible calculation, the United States shall, on July 9, 2013, provide to the court an updated chart from the Child Exploitation and Obscenity Section of the Department of Justice showing the number of federally-convicted "jan_feb" possessors.

**IT IS SO ORDERED:**

ENTER:

s/ Leon Jordan
United States District Judge